Chief Justice Robertson,
delivered the opinion of the court.
Benjamin .Wash sued out a warrant against Robert McBrayer and James McBrayer, complaining of a forcible entry, or detainer of 150 acres of land. On the trial in the country, the jury found both defendants “guilty of the forcible entry and de-tainer complained of” in the warrant; and on a traverse to the circuit court, a jury found the inquisition true, and judgment for restitution was rendered accordingly; to reverse which this appeal is prosecuted.
The appellants complain, that the circuit court erred in refusing, on their motion, to quash the inquisition; in refusing instructions moved for by them; *465 ín giving an instruction on the motion of the appellee; and in overruling a motion for a new trial.
Warrant for a forcible entry or detain-er, is maintainable.
On a warrant charging only a forcible entry, an inquisition finding a forcible de-tainer, is bad. And so e con-verso, on a warrant charging only a forcible de-tainer, an in-qui-ition finding a forcible entry, is bad. If the inquisition, in the country, find a forcible de-tainer, a verdict in the circuit court finding a forcible entry, should be set aside.
On a warrant for a forcible entry, nn.jn-qui-ition finding a forcible entry and de-tainer is good. On a warrant for a forcible entry or de-tainer, an inquisition finding a forcible entry and de-tainer, is valid
I. The motion to quash, was made on the ground, that the inquisition transcended the complaint in the warrant, the latter being only for a forcible entry or detainer, and the former being for a forcible entry and detainer. It has been decided that a warrant for a forcible entry or detainer may be maintained; see Carpenter vs. Shepherd (IV. Bibb) and as the substance, rather than the form, should be regarded in such summary remedies in the country, we fully approve that decesion. But,as the object of a warrant is to specify, and notify the accused of, the charge to be enquired into, the utmost indulgence which jus-trice or the object of all pleading would allow, could not sustain an inquisition convicting a party of an act not charged in the warrant. Hence, as forcible entries and detainers are specifically different, an inquisition finding a forcible detainer, would not be good on a warrant charging only a forcible entry; and e converso. And for a similar reason,as on a traverse, the only question is, whether or not the inquisition is true, if the inquisition be for a forcible detainer, a verdict in the circuit court, finding a forcible entry, will not be responsive to the issue, and should be set aside; Commack vs. Macy,(III. Marshall, 296.)
As the charge in this case is in the alternative, it necessarily imports either a forcible entry or detain-er, but not both; and therefore, as the inquisition convicted the appellants of both, it is more comprehensive, in terms, than the warrant. But it has not convicted them of that with which they were not charged, but only of more than was imputed to them. If the inquisition had found them guilty of a forcible entry, it would have been good, because they are charged with such an entry. On such an inquisition, judgment would have been rendered, for restitution and for costs. Although the inquisition is fora forcible detainer, as well as entry, the judgment would be precisely the same, as if a forcible entry only had been found; wherefore, on a warrant for a forcible entry, an inquisition for a forcible entry and detainer ought, in our opinion, to be sustained; because, as to the entry, it is unquestionably good, and adding the *466 detainer (not charged) as immaterial, as it docs not affect the judgment in any degree: Consequently, there is no error In the refusal to quash the inquisi- : tion in this case.
IL & III. As the circuit court gave an instruction In lieu of those asked for hy the appellants, we shall consider that given, and those refused, together: and in doing so, it will not be necessary to notice all the points involved; because, by disposing of the instruction which was given, we shall settle the law of the case.
The father of the appellants having bought an interest, to the extent of 200 acres, in a settlement and preemption®}' 1400 acres; the grant issued to him and others for the entire tract of !400 acres. About the year J794, he entered on the land, and having, by actual survey, laid off and demarked 200 acres, (all he claimed or had a just right to) settled upon it, and conlintsed, with the assent of his co-grantees, to live ni-pon it many years, and until his death, since 5 82!. His enclosure extended beyond bis marked boundary, and Imiladed about 20 acres, not embraced by that ¡¡toaisdary. It -does not appear that lie claimed more ilian ike 200-arresor considered himself in possession ©1" ¡more than 200 acres and the 20 acres which he had enclosed beyond his marked boundary, until IS 17, when be purchased from T. Malisan® iveirs (who held an elder grant, covering the settlement and a small part of Ihe pre-emption) their claim to 575 arres, including his .improvements, and all the land wtr in controversy, a part of -which, is the 20 acres already described. Since his death, all the land, ftas claimed by him,has been partitioned among Ids •children, and about a year prior to the date of the warrant m this case, one-of thesa (the appellant Robert) entered. ®n the p-urt allotted to him, and within 'the bomidarj purchased, as aforesaid, from Madison’s licks.
fa l@SB, Samuel Hatton purchased the entire and’aided interest in the settlcíncaí and pre-emption, excepting She interest of the father of the appellants; and immediately settled on the pre-emption, hut did not enter ¡or encroach upon Madison. Some time in 3 817, (hat at what particular iitne it does not appear) *467 he settled a son-in-Jaw within the boundary of Madi* son, but not within that of MeBrayer, as purchaser from 1\J idison; the tenement Urns possessed has been ever since occupied under Hutton’s title, but is no proof as to its extent beyond its actual close. In 1818, Hutton sold ail Ins interest (excepting a designated boundary not interfering with Madison) to Chiles, who sold the same to Phillips, who sold to the «appellee; in consequence whereof, Hutton conveyed his title to the appellee in 1820. But Chiles did not,. in fad, claim or sell any land covered by Madison; and the appellee has never been actually possessed of any land within Madison’s boundary, except so far as a continued occupancy, by bis tenant, of the tenement settled by the son-in-law- of Hutton, and the extension. about the year 1825, of his own fence over one of Madison’s lines so as to enclose about five acres in Madison’s grant.
MeBrayer (the father of the appellants) held and occupied, ever since 1821, a field within the boundary of his purchase from Madison, and unconnected with • the 20 acres field before-described.
Ot this stale of case, the circuit court instrncted tlie jury ‘'that if they believed, from the evidence, that. MeBrayer (the father) or his heirs after him, got possession of any part of his purchase before Muí ton took possession under his deed, and that possession had been continued down until the lime of the entry complained of; they ought to find for the MeBrayer#; but that if they believed that Hutton first took possessim under ids deed, his possession extended to his whole boundary, they ought to find for H ash.
The latter branch of this instruction is evidently erroneous, for several reasons.
1st. If Hu ton took possession first, it does not follow as a necessary consequence, that his possession was co-extensive with the boundary of his purchase, because tuere is some evidence tending, in some degree, to shew that he did nut mean to interfere with Madison, and the effect of that evidence the jury had a right to determine.
2nd. If Hutton’s possession be admitted to have been coterminous with his deed, it is sot a necessary *468 consequence, in fact or in law, (hat the appellee’s possession was ever so extensive or continued to be so, and certainly there is nothing in the foregoing facts (concentratingall the testimony) which can prove, indisputably, that the appellee was, in fact, possessed of the land in controversy, at the lime of the entry complained of,
3rd. It would seem to be far from being improbable that, whatever may have been the extent of Hutton’s Original possession by construction, Chiles, Phillips and the appellee, since the sale by Madison’s heirs to-McBrayer, never, in fact, possessed or claimed the land now in contest. Indeed, such is the deduction of l»w, from what seems to he a rational and consistent interpretation of all the circumstances. As Hutton was living on his purchase, (he possession of his Son-in-law settled by him, on another part of it, could not, in the absence of any evidence as to its extent, be ¡construed to have been beyond his actual enclosure» Neiiher Hutton nor any other person claiming under him, (except his said son-in law) ever encroached on Madison’s claim, only so far as the appellant so encroached, by protruding his fence, about the year 1825, across one of Madison’s lines; and they did not ithereby, or otherwise interfere with the land sold to J\fc-Broyer, and nozo in contest. Madison’s patent being the eldest, McBrayer, claiming under it, liad a right to the possession. And from all these facts, a jury might infer that it had been conceded to him by the appellee; see Smith vs. Morrow (V. Littell, 210.)
4th. Without any voluntary concession hy (he ap-pellee, a jury might rightfully infer that McBrayer,. and he alone, was in the actual possession of all the land in contest, ever since his purchase in 1.817, or at least since 1821» Being in actual possession, as he was, of the 20 acre field, after he purchased the right 'of Madison’s heirs including that field as well as his .residence; the law presumes tlwt his actual possession expanded co-extensive!y with the hounds of his purchase; Cates vs. Loftus’ heirs (IV. Monroe, 442.) 4f there had been an actual adversary residence upon or enclosure of any part of the land, even then, according to the case of Hord vs. Bodly, (V. Littell, 88) an entry by McBrayer under a superior legal tills;,, *469 would have given him possession, of the whole; and whether his residence or his occupancy of the 20 . » * *. , acres could be considered as an entry, m orxect, or not, he did actually enter in 1821, by taking sion of the other small triangular field. As therefore, there was no actual enclosure of. or residence upon any of the land purchased from Madison’s heirs, except by McBrayer, he might be considered as actually possessed ever since his purchase or since 1821, of the whole tract so purchased. It is not necessary to determine whether the case of Hord vs. Bodley, should be recognized as authoritative, so far as it decides that a subsequent entry, within the interference, by one claiming under the elder grant, actually amounts loan eviction of a prior occupant under a junior grant, even from his possessio pedis. For however that may be, as in-this case, there was no such possession under the junior grant, interfering with the purchase from those holding the elder title, a jury would certainly be authorized to decide that McBrayer,and no one else, not holding under him, has been in the actual possession of ail (behind in contioversv, since 1817, or at least since 1821,even though Hutton may have been, prior to that time, actually possessed of it, in-consequence of his residence within the boundary of the settlement and pre emption.
Denny, for appellants; Richardson, for appellee.
IV. The circuit court ought to have granted a new trial, because: 1st, The jury was misinstructed. 2d. There was not a particle of evidence tending, in any degree, to prove that one of the appellants (James McBrayer) ever made any entry whatever, on any of the land described in the warrant.
Wherefore, the judgment of the circuit court is reversed, and the cause remanded for a new trial.